¶ 89.
SHIRLEY S. ABRAHAMSON, J.
{dissenting). Only one question of law has been at issue in the instant case since its inception: Whether provisions *520 of Wisconsin's implied consent law authorizing war-rantless blood draws from unconscious drivers, Wis. Stat. §§ 343.305(3)(ar) and (b), are constitutional. These statutory provisions appear in Attachment l.[1]
¶ 90. The constitutional inquiry into the statute's unconscious driver provisions focuses on whether statutory implied consent to a blood draw, a significant search of the person, satisfies the "consent" exception to the Fourth Amendment. This is the only Fourth Amendment issue the parties addressed in the circuit court and in their briefs and arguments in this court. This is the only Fourth Amendment issue addressed by the circuit court. This is the only issue addressed by the court of appeals in its certification memo.[2]
¶ 91. At the suppression hearing, the circuit court considered the only two issues presented by the parties: probable cause to arrest the defendant and the constitutionality of the Wisconsin implied consent law.
f 92. The circuit court held that there was probable cause to arrest the defendant. I agree.
¶ 93. After indulging every presumption to sustain the constitutionality of the statute, the circuit court concluded that the statute was unconstitutional under the Fourth Amendment: No consent in the *521 constitutional sense can be given when the driver is unconscious and incapable of giving or withdrawing consent. I agree.
f 94. Rather than address the Fourth Amendment issue presented by the parties, the lead opinion sua sponte upholds the warrantless blood draw under the Fourth Amendment by fabricating "exigent circumstances." The lead opinion misleads the reader into believing that the circuit court addressed and decided the existence of exigent circumstances. See lead op., ¶ 2. The circuit court did not do so. In paragraph 15, the lead opinion fesses up that the circuit court merely stated without analysis that no exigent circumstances were presented by the instant case.
¶ 95. The lead opinion establishes the existence of "exigent circumstances" by stepping off the bench, seating itself at the counsel table as advocate for the State, and putting itself on the stand as witness for the State, thus abandoning its role as neutral decision maker. By raising and deciding the exigent circumstances exception sua sponte without giving the defendant an opportunity to present evidence or to be represented by counsel, the lead opinion violates basic concepts of due process and destabilizes the adversary system at both the trial and appellate levels.[3]
*522 ¶ 96. Furthermore, no reasonable view of the record supports theholding that exigent circumstances justify a warrantless blood draw in the instant case. The lead opinion refuses to hold itself to the "heavy burden" it undertakes (when it acts as the State's surrogate) to rebut the presumption by clear and convincing evidence that a warrantless search of Howes is unreasonable.[4]
¶ 97. In essence, the lead opinion engages in an assault on Missouri v. McNeely, 133 S. Ct. 1552 (2013). McNeely caused a paradigm shift in Fourth Amendment and drunk-driving law.[5] The McNeely Court held:
• "[WJhile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, ... it does not do so categorically." McNeely, 133 S. Ct. at 1563.
• A "careful case—by-case assessment of exigency" must be undertaken. McNeely, 133 S. Ct. at 1561.
• Most importantly, if law enforcement "can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." McNeely, 133 S. Ct. at 1561 (emphasis added).
*523 f 98. These McNeely principles govern the instant case. McNeely's directive that a court engage in careful, case-by-case assessments of exigency cannot be met by way of the lead opinion's assumptions and speculation in an appellate opinion. The record does not support a case-by-case assessment of exigency in the instant case and does not support a holding that law enforcement could not have reasonably obtained a warrant before a blood sample could be drawn.
f 99. Because the lead opinion whittles away constitutional protections for the defendant and all of us under the rubric of exigent circumstances, I dissent.
f 100. I will first address the lead opinion's explication of exigent circumstances as an exception to the Fourth Amendment in the instant case. I will then address the constitutionality of the statutory implied consent under the Fourth Amendment.
I
¶ 101. At the hearing on the motion to suppress the test results from the blood draw, the State's witness, Deputy Schiro of the Dane County Sheriffs Office, was the only witness. He testified to establish probable cause and his compliance with the implied consent law.
¶ 102. The State did not introduce any evidence to establish exigent circumstances. Indeed, the State did not even hint that exigent circumstances may have authorized the warrantless blood draw.
¶ 103. The defendant has never been given notice or an opportunity to present evidence or make arguments regarding what has become the dispositive issue in the instant case—exigent circumstances. I thus conclude that the lead opinion has deprived the *524 defendant of due process and has destabilized the adversary system at both the trial and appellate levels.
¶ 104. A defendant has due process rights to notice of issues to be resolved and to be heard in a meaningful way, including "a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." Washington v. Texas, 388 U.S. 14, 18 (1967) (citing In re Oliver, 333 U.S. 257, 273 (1948)).[6] The defendant's due process rights in the instant case to get notice, to be heard, to present a complete defense, and to have counsel have been violated.[7]
*525 ¶ 105. Furthermore, this kind of violation of due process may undermine the validity and legitimacy of the court's decision: "If notice is not given, and the adversary process is not permitted to function properly, there is an increased chance of error . . . and with that, the possibility of an incorrect result." Lankford v. Idaho, 500 U.S. 110, 127 (1991).
¶ 106. Moreover, the lead opinion violates a basic rule of appellate review by bypassing the adversary process and raising and deciding a dispositive issue on its own without the benefit of briefs or argument.[8]
*526 ¶ 107. In addition to issues of violating due process and appellate practice, as a factual matter, if counsel for the defendant had had an opportunity to address exigent circumstances, counsel might have presented evidence and argument that significantly undercut the lead opinion's presentation of what might have been (but was not and might not be) the State's position on exigent circumstances.
¶ 108. For example, a key factual sticking point in the lead opinions ⅛ exigent circumstances analysis is that the record does not demonstrate that law enforce *527 ment could not have timely secured a warrant. The lead opinion presents no evidence establishing approximately how long it would have taken to obtain a warrant for the blood draw in Dane County. Yet the lead opinion, without any evidentiary record, concludes that the officer did not have time.
¶ 109. At the suppression hearing, which addressed whether the officer had probable cause to arrest and the officer's compliance with the implied consent statute, the officer testified as follows on cross-examination by defense counsel and on redirect examination by the State that he had the time to get a warrant:
On cross-examination of Deputy Schiro by defense counsel:
Q. And you had plenty of time in this case to get a warrant, didn't you?
A. Yes
[[Image here]]
On redirect examination of Deputy Schiro by the State:
Q. You testified on cross-examination, Deputy Schiro, that you had plenty of time to get a warrant before the blood draw. Why didn't you?
A. I believe I did not have to.
¶ 110. The lead opinion rejects the Dane County deputy's testimony as the deputy's subjective belief. The lead opinion reminds us that the totality of the circumstances test for exigent circumstances is an objective one. See lead op., ¶ 36 & n.9.
¶ 111. Relying on United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000), the lead opinion reasons that "a police officer's subjective belief that *528 exigent circumstances exist is insufficient to make a warrantless search." The instant case is distinguishable from Richardson. Here, the officer testified that he did not believe there were exigent circumstances. Because the Fourth Amendment puts the burden to prove the reasonableness of a warrantless search on the government, it is one thing to ignore the officer's subjective, self-serving belief that he did not have time to get a warrant and a wholly different issue to rely on the officer's statement that he had time to get a warrant as an objective evaluation of exigency.
¶ 112. Furthermore, defense counsel might have offered as expert testimony the deputy's testimony about whether he had time to get a warrant. The testifying deputy has worked for 15 years as a Dane County law enforcement officer, and he ought to be qualified to testify from personal, professional expertise about the time needed to get a warrant in Dane County.
¶ 113. Advancements have been made for the expeditious processing of warrant applications. McNeely, 133 S. Ct. at 1561-63. See Wis. Stat. §§ 968.12(3)(a)-(d) (authorizing search warrants on oral testimony communicated to the judge by telephonic, radio, or other means of electronic communication). The Dane County Circuit Court has a system of 24/7 duty judges to provide telephonic warrants. See Dane County Court Rules, Rule 102, entitled "Duty Judge Responsibility."
¶ 114. Indeed the Dane County deputy's view on how long it would take to get a telephonic warrant in Dane County ought to be more reliable than the unsupported view of the three justices joining the lead opinion. Furthermore, the Dane County Circuit Court's view on how long it would take to get a *529 telephonic warrant in Dane County ought to be more reliable than the view of the three justices joining the lead opinion.
¶ 115. In rendering its decision declaring the blood draw unconstitutional, the circuit court declared as an aside that there were no exigent circumstances causing an exception to the warrant requirement and that the deputy had time to get a warrant:
[T]here are no exigent circumstances that are identified here that would cause an exception to the warrant requirement. . . . [t]he officer testified that there was no reason he could not have gotten a warrant. . . . There is nothing to suggest that there were exigent circumstances that would obviate the warrant requirement, so that's where we need to leave it then today.
¶ 116. In addition, defense counsel might have challenged the lead opinion's reliance on the defendant's prohibited alcohol concentration of 0.02 percent as supporting exigent circumstances. Blood alcohol concentration, BAC, refers to the amount of alcohol in the driver's blood. Prohibited alcohol content, PAC, refers to the legal limit of alcohol in a driver's blood.[9]
¶ 117. According to the lead opinion, a 0.02 percent BAC will disappear in one to two hours. Lead op., *530 ¶ 45. With this shortened timeline, the time available for an officer to obtain a warrant decreases, according to the lead opinion. This proposition is central to the analysis in the lead opinion.
¶ 118. Under closer scrutiny, it appears that this critical one-to-two-hour time period might have elapsed before the blood draw was requested or taken and that the lowered PAC is irrelevant to the exigent circumstances analysis in the instant case.
¶ 119. The record does not reveal the time at which the defendant stopped drinking or the time at which the accident occurred. See lead op., ¶ 47. The record demonstrates only that the blood draw was roughly two hours after the sheriffs office was advised of the accident. See lead op., ¶ 13.
¶ 120. Thus, the defendant's last drink and the accident were obviously more than two hours before the blood was drawn. If a 0.02 percent BAC will dissipate in one to two hours (as the lead opinion suggests), there were no exigent circumstances when the blood draw was made because the BAC in all probability would had already dissipated.
¶ 121. The record nevertheless indicates that the defendant's BAC was in all probability more than 0.02 percent. Several witnesses reported smelling intoxicants on the defendant. According to the Assistant District Attorney's argument at the suppression hearing, a person with a 0.11-.13 percent BAC will not *531 exude "an incredibly heavy" odor. Thus, a person with a 0.02 percent BAC would have exuded even less of an odor of intoxicants.[10]
¶ 122. If the defendant's BAC was substantially higher than 0.02 percent, then law enforcement would have had more than one to two hours after the last drink within which to obtain a warrant for a blood draw and still gather evidence that defendant violated the law.
¶ 123. In either eventuality, that is, whether the defendant had a .02 percent BAC or had a higher BAC, the lead opinion's reliance on the defendant's lower PAC threshold to support exigent circumstances falls apart.
¶ 124. Defense counsel might have shown that the hour before law enforcement requested the hospital for a blood draw and the hour between the officer's request for a blood draw and the blood draw were sufficient times for the officer to get a warrant.
¶ 125. The evidence of the defendant's medical condition was sketchy. It is thus unclear whether it would have led a reasonable officer to conclude that there was no time to obtain a warrant before blood was drawn.
¶ 126. Defense counsel might have also shown that several law enforcement officers were on the accident scene and were available to aid Deputy Schiro. Deputy Schiro also talked with his sergeant.
¶ 127. The involvement of other law enforcement agents cuts against the existence of exigent circumstances. There is nothing in the record indicating that *532 the several officers involved were so busy finding or identifying the driver, extensively investigating the accident, tending to injured victims, removing the deer and motorcycle from the road, or engaging in other activities that neither they nor the sergeant could not initiate a telephone warrant process.
¶ 128. In addition, defense counsel might have persuaded the court to follow precedent, namely State v. Kennedy, 2014 WI 132, ¶ 34 n.13, 359 Wis. 2d 454, 856 N.W.2d 834, in which the court explained its reluctance to address exigent circumstances when the State does not argue that exigent circumstances existed:
The State, which would bear the burden, does not argue that exigent circumstances existed in this case. Neither the State nor Kennedy focus on this issue. Whether an exigency exists in a given case will vary depending on any number of facts or circumstances, as law enforcement investigations are often extraordinarily fluid situations. Our holding in this case must not be read to affirmatively conclude that exigent circumstances did not support the warrantless investigatory blood draw performed on Kennedy. Nonetheless, our analysis remains focused on the arguments addressed by counsel. . . .[11]
*533 f 129. The legal effect of the exigent circumstances analysis in the lead opinion is that it allows a warrantless blood draw when it is unclear from the record whether law enforcement had time to secure a warrant. Yet McNeely declares that no exigent circumstances exist when there is time to secure a warrant.
¶ 130. Furthermore, the legal effect of the exigent circumstances analysis in the lead opinion creates an impermissible per se rule that no warrant is needed to draw blood for certain drivers. It is unclear, however, to whom the per se rule is applicable: To drivers who are unconscious from a motor vehicle accident? To unconscious drivers of motor vehicles who are restricted to a 0.02 BAC? To seriously injured hospitalized drivers?
¶ 131. In other words, law enforcement doesn't know which elements of the totality of the circumstances present in the instant case, see lead op., ¶ 3, are essential to justify a warrantless blood draw. The lead opinion provides no clear direction for law enforcement to follow in the future.
¶ 132. In sum, as a matter of law, when both the State and the defendant have not had the opportunity to offer evidence or argument on the issue of exigent circumstances and this court decides the case on the dispositive issue of exigent circumstances, the defendant has not received a full and fair due process evidentiary or appellate hearing on his Fourth Amendment motion to suppress. The instant case does not present an extraordinary situation justifying departure from the rule requiring the parties to present the issues.
¶ 133. In sum, as a matter of fact, the lead opinion cannot condone the warrantless blood draw on exigent circumstances with the sparse record of facts *534 before it.[12] As the Dane County Circuit Court observed in declaring the relevant provisions of Wisconsin's implied consent law unconstitutional:
All the police officer had to do to comply with the Fourth Amendment was to get a warrant. The defendant was not about to go anywhere but to the operating room. The duty judge was a phone call away. Following McNeely, we routinely handle blood draw search warrants by telephone. I respectfully suggest that procedure is more consonant with the Fourth Amendment than reading a form to an unconscious man and then ordering his blood to be taken.
*535 II
¶ 134.Because I conclude that exigent circumstances did not render the warrantless blood draw constitutionally permissible, I turn to considering the provisions of the implied consent law regarding unconscious drivers. According to the statute, unconscious drivers incapable of withdrawing consent are presumed not to have withdrawn consent to the blood draw. See Wis. Stat. § 343.305(3)(b).
¶ 135. The State did not solicit any testimony at the suppression hearing that the defendant's consent to the blood draw was given in fact and was voluntary. The State relied on the statute alone to prove the defendant's consent.
¶ 136. Adhering to the reasoning set forth in State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, I conclude that the statute's unconscious driver provisions are unconstitutional because unconscious drivers have not freely and voluntarily consented to the warrantless blood draw under the Fourth Amendment. Therefore, the warrantless blood test in the instant case should be suppressed.
¶ 137. Throughout the course of the instant litigation, the State has relied on consent as the applicable exception to the warrant requirement to validate the warrantless blood draw. The State's position is that the defendant's statutory "implied consent," deemed to have occurred before the defendant was arrested for suspected drunk driving, is voluntary consent for purposes of the consent exception to the Fourth Amendment's warrant requirement.
¶ 138. The parties disagree whether this statutory implied consent satisfies the Fourth Amendment requirement of consent. No federal or state cases are *536 directly on point, and, as the court of appeals' excellent certification memorandum explains, tension exists in the case law.
¶ 139. Because a majority of the court has not written on the constitutional issue, I do not address it at length.
¶ 140. Upon considering the parties' arguments, the reasoning of the circuit court, and case law from the United States Supreme Court and the states, I conclude that the Wisconsin implied consent statute, applied to unconscious drivers, does not provide an independent and valid consent exception to the warrant requirement.
¶ 141. Warrantless searches are unreasonable, subject to a few narrow exceptions. State v. Artic, 2010 WI 83, ¶ 29, 327 Wis. 2d 392, 786 N.W.2d 430. One such exception is a search conducted pursuant to consent. The general rule is that the State must prove that consent was "given in fact by words gestures, or conduct" and that the consent was "voluntary." Artic, 327 Wis. 2d 392, ¶ 30.
¶ 142. Whether the consent was given in fact is a "question of historical fact" that an appellate court will uphold "if it is not contrary to the great weight and clear preponderance of the evidence." Artic, 327 Wis. 2d 392, ¶ 30.
e 143. If the State establishes consent in fact, the State must prove that the consent was given freely and voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 225 (1973) (consent must result from "an essentially free and unconstrained choice").[13] The State *537 must meet this burden of proof by clear and convincing evidence. Artic, 327 Wis. 2d 392, ¶ 32. "The determination of voluntariness is a mixed question of fact and law based upon an evaluation of the totality of all the surrounding circumstances." Artic, 327 Wis. 2d 392, ¶ 32 (internal quotation marks omitted).
¶ 144. The consent required in Fourth Amendment cases must be " 'an essentially free and unconstrained choice,' not 'the product of duress or coercion, express or implied.'" Artic, 327 Wis. 2d 392, ¶ 32 (quoted source omitted).
¶ 145. The State argues that drivers on a Wisconsin highway have given "implied consent" to a warrantless blood draw; that statutory "implied consent" is the equivalent of actual voluntary consent for Fourth Amendment purposes; and that the Wisconsin implied consent statute is constitutional. According to the State, McNeely does not govern this case because McNeely concerns exigent circumstances, not consent.
¶ 146. The State asks this court to hold that the statutory implied consent supplies constitutional consent for conscious and unconscious drivers. The State *538 asks this court to overturn State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, in which the court of appeals held that the implied consent statute relating to conscious drivers does not violate the Fourth Amendment because it provides the person with the choice of providing actual consent to a blood draw or facing license revocation. Under Padley, the statutory implied consent of drivers is consent to this choice, not consent to a blood draw. The State asks this court to overturn Padley because the import of Padley is to cast doubt on whether the statute's implied consent suffices as voluntary consent in all circumstances for Fourth Amendment purposes.[14] The State's position is that the statutory implied consent is sufficient for Fourth Amendment purposes in all circumstances.[15]
¶ 147. The defendant argues that Padley was correctly decided. He asserts that he did not consent in fact to a blood draw because he was unconscious; that *539 any consent was not voluntary because the State's interpretation of the statute makes implied consent irrevocable;[16] and that the statutory provisions regarding unconscious drivers are the functional equivalent of a categorical rule rejected in McNeely,[17]
¶ 148. Relying on State v. Padley, 2014 WI App 65, ¶ 26, 354 Wis. 2d 545, 849 N.W.2d 876, in which the court of appeals distinguished between implied consent (which is consent to choose between a blood draw and license revocation) and actual voluntary consent for Fourth Amendment purposes, the circuit court correctly reasoned, in my opinion, that an unconscious defendant did not give actual voluntary consent to a blood draw and that statutory implied consent is analogous to the categorical exigent circumstances declared invalid in McNeely.
¶ 149. Padley has statewide precedential effect. Wis. Stat. § 752.41(2). We should not overrule precedent without a compelling justification. Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), a recent United States Supreme Court case, supports Padley and the circuit court's decision in the instant case. In Birchfield, the United States Supreme Court recognized that the longstanding rule permitting a search inci *540 dent to arrest allows warrantless breath tests. Nevertheless, the Court recognized that blood draws are significant intrusions into the body and concluded that the Fourth Amendment does not categorically permit warrantless blood draws as valid incident to an arrest for drunk driving. Birchfield, 136 S. Ct. at 2184. Referring to McNeely, the Court explained that "[n]oth-ing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not." Birchfield, 136 S. Ct. at 2184.
¶ 150. If the United States Supreme Court refuses to categorically permit a warrantless blood draw premised on the well-established search incident to arrest exception to the warrant requirement, a blood draw based on a statutorily imputed implied consent surely cannot pass muster. Birchfield, therefore, supports the notion that warrantless blood draws justified by only statutory implied consent (rather than voluntary consent in fact) are unreasonable under the Fourth Amendment. Birchfield also supports the notion that such blood draws, especially regarding an unconscious driver, lead to impermissible per se exceptions to the Fourth Amendment.
¶ 151. In sum, in addition to my conclusions regarding the errors in the lead opinion in relying on exigent circumstances, I conclude that the warrantless blood test in the instant case is not the product of actual consent in fact made freely and voluntarily.
¶ 152. Accordingly, I conclude that the blood test results should be suppressed as a violation of the Fourth Amendment.
*541 ¶ 153. For the reasons set forth, I write separately to affirm the order of the circuit court suppressing evidence of the blood test.
¶ 154. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent and that Justice DANIEL KELLY joins Part II of this dissent insofar as it discusses the constitutionality of Wis. Stat. § 343.305(3)(b).
*542 ATTACHMENT 1
[[Image here]]

 For clarity, Chief Justice Roggensack's lead opinion is joined by Justice Rebecca Grassl Bradley and Justice Daniel Kelly. Justice Gableman's concurring opinion is joined by Justice Annette Kingsland Ziegler. Justice Daniel Kelly filed a concurring opinion. This dissent is joined in its entirety by Justice Ann Walsh Bradley, and in Part II by Justice Daniel Kelly insofar as it discusses the constitutionality of Wis. Stat. § 343.305(3)(b).

 See State v. Howes, No. 2014AP1870-CR, certification by Wisconsin Court of Appeals (Wis. Ct. App. Jan. 28, 2016).

 As the United State Supreme Court has explained: "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Greenlaw v. United States, 554 U.S. 237, 243-44 (2008) (citing Castro v. United States, 540 U.S. 375, 381-83 (2003))- The Court further explained: "To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has *522 usually been to protect a pro se litigant's rights." The defendant in the instant case is not a pro se litigant. He is represented by counsel.

 Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984) ("[P]olice bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests").

 See, e.g., State v. Tullberg, 2014 WI 134, ¶ 42, 359 Wis. 2d 421, 857 N.W.2d 120 (McNeely "changed the landscape of warrantless blood draws in Wisconsin").

 Lankford v. Idaho, 500 U.S. 110, 126 (1991) ("notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure."); California v. Trombetta, 467 U.S. 479, 485 (1984) ("criminal prosecutions must comport with prevailing notions of fundamental fairness"); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-14 (1950) (due process requires that "adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case").

 See In re Termination of Parental Rights to Daniel R.S., 2005 WI 160, ¶ 65, 286 Wis. 2d 278, 706 N.W.2d 269 ("the opportunity to be heard includes the right to 'present a complete defense'") (quoted source omitted).
"The opportunity to present arguments on the legal issue upon which a case is to be decided is fundamental to sound legal process ... ." Bloomer v. Gibson, 912 A.2d 424, 433-34 (Vt. 2006) (citing Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts, 69 Tenn. L. Rev. 245 (2002)). The Bloomer court cited large swaths of Milani and Smith's article, including the following discussion:
[B]eing denied an opportunity to address the issue that ultimately proves dispositive of a case is no different than a complete denial of an opportunity to be heard. If a court perceives the issues on appeal as different from those addressed by the parties, the parties should have a right to receive notice of the court's *525 concern about those issues and to present arguments on them. Without this right, the opportunity to he heard is hut a "teasing illusion." Allowing a party to submit briefs and arguments on what the party believes to be the issues, but denying that party the opportunity to be heard on the issue the court deems disposi-tive, is akin to granting citizens free speech but barring them from speaking on issues of public concern. In both situations, the exception renders the right meaningless.
Milani & Smith, 69 Tenn. L. Rev. at 268-69 (footnotes omitted).
See also Justice Ann Walsh Bradley's concurrence in City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶ 68, 302 Wis. 2d 599, 641, 734 N.W.2d 428, 450 (Bradley, J., concurring), explaining the fundamental premise of the adversary system:
The rule of law is generally best developed when issues are raised by the parties and then tested by the fire of adversarial briefs and oral arguments. Indeed, "[t]he fundamental premise of the adversary process is that these advocates will uncover and present more useful information and arguments to the decision maker than would be developed by a judicial officer acting on his own in an inquisitorial system." Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions By Appellate Courts, 69 Tenn. L. Rev. 245, 247 (2002), citing United States v. Burke, 504 U.S. 229, 246, 112 S. Ct. 1867, 119 L. Ed. 2d 34 (1992) (Scalia, J., concurring).

 "As various members of this court have said, we should not 'reach out and decide issues' that were not presented to the *526 court by the parties." Dairyland Greyhound Park, Inc., v. Doyle, 2006 WI 107, ¶ 335, 295 Wis. 2d 1, 719 N.W.2d 408 (Roggensack, J., concurring in part & dissenting in part) (quoting Town of Beloit v. Cty. of Rock, 2003 WI 8, ¶ 72, 259 Wis. 2d 37, 657 N.W.2d 344 (Abrahamson, C.J., dissenting)). See also State v. Thompson, 2012 WI 90, ¶¶ 9, 60, 342 Wis. 2d 674, 818 N.W.2d 904 (declaring that the court should not decide issues that are not briefed).
The United States Supreme Court has often explained the fundamental importance of the adversarial presentation of issues. See, e.g., Penson v. Ohio, 488 U.S. 75 (1988) ("This system is premised on the well-tested principle that truth—as well as fairness—-is 'best discovered by powerful statements on both sides of the question.'" (citations omitted)); Polk Cty. v. Dodson, 454 U.S. 312, 318 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness."); Mackey v. Montrym, 443 U.S. 1, 13 (1979) ("[O]ur legal tradition regards the adversary process as the best means of ascertaining truth and minimizing the risk of error .. . .").
See also State v. Negrete, 2012 WI 92, ¶ 80 n.20, 343 Wis. 2d 1, 819 N.W.2d 749 (Abrahamson, C.J., dissenting) ("Scholars have made similar observations. See, e.g., Stephan Landsman, Readings on Adversarial Justice: The American Approach to Adjudication (1988); Jerold H. Israel, Cornerstones of the Judicial Process, Kan. J.L. & Pub. Pol'y, Spring 1993, at 5; Ellen E. Sward, Values, Ideology, and the Evolution of the Adversary System, 64 Ind. L.J. 301, 316-19 (1989).").

 See Wis. Stat. § 346.63, Operating under influence of intoxicant or other drug:
(1) No person may drive or operate a motor vehicle while:
[[Image here]]
(b) The person has a prohibited alcohol concentration.
See Wis. Stat. § 340.01(46m):
"Prohibited alcohol concentration" means one of the following:
(a) If the person has 2 or fewer prior convictions, suspensions, or revocations, as counted tinder s. 343.307(1), an alcohol concentration of 0.08 or more.
*530 (c) If the person is subject to an order under s. 343.301 or if the person has 3 or more prior convictions, suspensions or revocations, as counted under s. 343.307(1), an alcohol concentration of more than 0.02.

 The assistant district attorney set forth this proposition in order to explain why Deputy Schiro did not testify that he recalled smelling alcohol on the defendant. See Pet. App. at 77.

 See also Bailey v. State, 790 S.E.2d 98, 104 (Ga. Ct. App. 2016):
The State, however, produced no evidence of exigent circumstances. For example, there was no evidence regarding how long the warrant process was expected to take and whether officers could have been seeking a warrant while Bailey was being transported to the hospital. Thus, this could have been the situation imagined by the McNeely Court "in which the warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer."

 The lead opinion also considers the four-part reasonableness test that applies once exigent circumstances are established that was set forth in State v. Kennedy, 2014 WI 132, ¶ 17, 359 Wis. 2d 454, 856 N.W.2d 834. See lead op., ¶ 25.
Because I conclude that there were no exigent circumstances in the instant case, I do not respond to the lead opinion's application of these factors. However, I am skeptical that the instant case satisfies the fourth factor, that "the arrestee presents no reasonable objection to the blood draw." Kennedy, 359 Wis. 2d 454, ¶ 17. Because the defendant was unconscious, he had no chance to object.
The lead opinion's response seems to be that "the fourth factor speaks to the reasonableness of the type of search employed, not whether a warrant was required to conduct the search." Lead op., ¶ 26 n.8.
Characterizing this factor as a reference to the type of test conducted and asserting that the defendant raised no objection to the type of search misses the point: The defendant was unconscious. The lead opinion has no way of knowing whether the defendant was "one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing. . .." Schmerber v. California, 384 U.S. 757, 771 (1966). The lead opinion seems to concede that the defendant did not impliedly consent to the search.
I do not understand the reasoning of the lead opinion in its footnote, but it seems internally inconsistent.

 In State v. Phillips, 218 Wis. 2d 180, 577 N.W.2d 794 (1998), this court provided a non-exclusive list of factors for courts considering the voluntariness of consent to consider:
*537 (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent (emphasis added).
State v. Artic, 2010 WI 83, ¶ 32, 327 Wis. 2d 392, 786 N.W.2d 430 (citing Phillips, 218 Wis. 2d at 198-203).

 The court of appeals explained that several cases, including the following, may be inconsistent: State v. Neitzel, 95 Wis. 2d 191, 289 N.W.2d 828 (1980); State v. Wintlend, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745; Village of Little Chute v. Walitalo, 2002 WI App 211, 256 Wis. 2d 1032, 650 N.W.2d 891; State v. Piddington, 2001 WI. 24, 241 Wis. 2d 754, 623 N.W.2d 528; State v. Disch, 129 Wis. 2d 225, 385 N.W.2d 140 (1986). See State v. Howes, No. 2014AP1870-CR, certification by Wisconsin Court of Appeals (Wis. Ct. App. Jan. 28, 2016).
Thus, the court of appeals requested that this court issue an authoritative decision clarifying the law.

 The Padley court noted that, "at least in the context of incapacitated drivers, 'implied consent' is a sufficient basis on which to proceed with a warrantless search." The Padley court acknowledged there may be a tension between its decision and the statutory language relating to incapacitated drivers. See State v. Padley, 2014 WI App 65, ¶ 39 n.10, 354 Wis. 2d 545, 849 N.W.2d 867.

 See Byars v. State, 336 P.3d 939, 945 (Nev. 2014) (a "necessary element of consent is the ability to limit or revoke it") (citing Florida v. Jimeno, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents.")); State v. Halseth, 339 P.3d 368, 371 (Idaho 2014) ("Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent.").

 See State v. Wulff, 337 P.3d 575, 582 (Idaho 2014) (declaring that Idaho's implied consent law, which did not allow drivers to revoke consent to a blood draw, was an unconstitutional per se exception to the Fourth Amendment).