PATIENCE DRAKE ROGGENSACK, C.J.
*154 ¶ 1 This appeal is before us on certification from the court of appeals.
¶ 2 Gerald Mitchell was convicted of operating while intoxicated and with a prohibited alcohol concentration, based on the test of blood drawn without a warrant while he was unconscious, pursuant to Wis. Stat. § 343.305(3)(b) (2013-14).[1] Mitchell contends that the blood draw was a search conducted in violation of his Fourth Amendment rights.
¶ 3 We conclude that Mitchell voluntarily consented to a blood draw by his conduct of driving on Wisconsin's roads and drinking to a point evidencing probable cause of intoxication. Further, through drinking to the point of unconsciousness, Mitchell forfeited all opportunity, including the statutory opportunity under Wis. Stat. § 343.305(4), to withdraw his consent previously given; and therefore, § 343.305(3)(b) applied, which under the totality of circumstances herein presented reasonably permitted drawing Mitchell's blood. Accordingly, we affirm Mitchell's convictions.
I. BACKGROUND
¶ 4 On the afternoon of May 30, 2013, officers from the City of Sheboygan Police Department were dispatched in response to a report that the caller had seen Mitchell, who appeared intoxicated, get into a gray van and drive away. Between 30 and 45 minutes later, Officer Alex Jaeger made contact with Mitchell. He found Mitchell walking near a beach. Mitchell was wet, shirtless and covered in sand. Mitchell's speech was slurred and he had difficulty maintaining his balance.
¶ 5 Mitchell admitted to Jaeger that he had been drinking prior to driving and that he continued drinking at the beach. He also stated that he had parked his vehicle "because he felt he was too drunk to drive." Nearby, officers found the gray van Mitchell was reported to have been driving.
¶ 6 After observing Mitchell's physical condition, Jaeger believed that it would not be safe to conduct standard field sobriety tests. Instead, he administered a preliminary breath test, which indicated a blood alcohol concentration (BAC) of 0.24.[2] Jaeger then arrested Mitchell for operating while intoxicated.
¶ 7 Following his arrest, and during the drive to the police station, Mitchell's physical condition deteriorated and his demeanor became more "lethargic." Upon arrival *155 at the police station, it became apparent that an evidentiary breath test would not be feasible. Instead, Jaeger opted to transport Mitchell to a nearby hospital for a blood draw.
¶ 8 During the approximately eight-minute drive to the hospital, Mitchell "appeared to be completely incapacitated, [and] would not wake up with any type of stimulation." Upon arriving at the hospital, Mitchell needed to be transported in a wheelchair where he sat "slumped over" and unable to maintain an upright seating position.
¶ 9 After Mitchell entered the hospital emergency room, Jaeger read Mitchell the Informing the Accused form, thereby reading Mitchell the statutory opportunity to withdraw his consent to a blood draw. However, Mitchell was "so incapacitated [that] he could not answer." Jaeger directed hospital staff to draw a sample of Mitchell's blood.[3] They did so. Mitchell did not awaken during the procedure.
¶ 10 The blood draw occurred approximately one hour following Mitchell's arrest. The analysis of his blood sample showed a BAC of 0.222.
¶ 11 Mitchell was subsequently charged with driving with a prohibited alcohol concentration (PAC), as well as operating a motor vehicle while intoxicated (OWI), as a 7th offense. Prior to trial, Mitchell moved to suppress the results of the blood test. He alleged that the warrantless blood draw violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.
¶ 12 In response to Mitchell's motion, the State contended that he had consented to the blood draw when he drove his van on Wisconsin highways according to a subsection of Wisconsin's implied-consent law, Wis. Stat. § 343.305(2). The State also contended that as an unconscious person, he is presumed not to have withdrawn his consent, pursuant to § 343.305(3)(b). The State expressly stated that it was not relying on exigent circumstances to justify the blood draw.
¶ 13 The circuit court[4] denied Mitchell's suppression motion in reliance on Wis. Stat. § 343.305(3)(b). The circuit court concluded that the officer had probable cause to believe that Mitchell was driving while intoxicated, and therefore, the blood draw was lawful. A jury convicted Mitchell of the OWI and PAC charges.
¶ 14 Mitchell appealed his conviction based on the sole contention that the warrantless blood draw violated his Fourth Amendment right to be free from "unreasonable searches and seizures."
¶ 15 The court of appeals, noting the opportunity to clarify the law in light of our recent decision in State v. Howes, 2017 WI 18, 373 Wis. 2d 468, 893 N.W.2d 812,[5] certified the following questions: (1) whether "implied-consent," the potential for which is described in Wis. Stat. §§ 343.305(2) & (3)(a), which arises *156 through a driver's voluntary conduct in operating a vehicle on Wisconsin roadways after drinking to intoxication, is constitutionally sufficient consent, and (2) whether a warrantless blood draw from an unconscious person pursuant to Wis. Stat. § 343.305(3)(b) violates the Fourth Amendment.
II. DISCUSSION
A. Standard of Review
¶ 16 Whether a suppression motion was properly denied presents a question of constitutional fact. Howes, 373 Wis. 2d 468, ¶ 17, 893 N.W.2d 812 (citing State v. Tullberg, 2014 WI 134, ¶ 27, 359 Wis. 2d 421, 857 N.W.2d 120 ). We will not set aside a circuit court's findings of historical fact unless they are clearly erroneous. State v. Brereton, 2013 WI 17, ¶ 17, 345 Wis. 2d 563, 826 N.W.2d 369. However, the application of those facts to Fourth Amendment principles presents a question of law that we review independently. Id.
B. Fourth Amendment General Principles
¶ 17 The Fourth Amendment to the United States Constitution, and its Wisconsin counterpart, Article I, Section 11 of the Wisconsin Constitution,[6] protect persons' rights to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV ; Wis. Const. art. I, § 11. "As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." Riley v. California, 573 U.S. ----, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) ). As a result, the Fourth Amendment does not prohibit all searches undertaken by government actors, but "merely proscribes those which are unreasonable." Howes, 373 Wis. 2d 468, ¶ 21, 893 N.W.2d 812 (quoting Tullberg, 359 Wis. 2d 421, ¶ 29, 857 N.W.2d 120 (quoting Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) ) ).
¶ 18 Drawing blood is a search of the person. Birchfield v. North Dakota, 579 U.S. ----, 136 S.Ct. 2160, 2173, 195 L.Ed.2d 560 (2016) (stating that "our cases establish that the taking of a blood sample or the administration of a breath test is a search"); Howes, 373 Wis. 2d 468, ¶ 20, 893 N.W.2d 812 (concluding that a blood draw is a search). Furthermore, a warrantless search is "presumptively unreasonable." State v. Brar, 2017 WI 73, ¶ 16, 376 Wis. 2d 685, 898 N.W.2d 499 (quoting Tullberg, 359 Wis. 2d 421, ¶ 30, 857 N.W.2d 120 ).
¶ 19 However, "there are certain 'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement." Brar, 376 Wis. 2d 685, ¶ 16, 898 N.W.2d 499 (quoting State v. Williams, 2002 WI 94, ¶ 18, 255 Wis. 2d 1, 646 N.W.2d 834 ). One such exception is a search conducted pursuant to consent. Brar, 376 Wis. 2d 685, ¶ 16, 898 N.W.2d 499. Warrantless consent searches are reasonable; and therefore, they are consistent with the Fourth Amendment. Fernandez v. California, 571 U.S. 292, 134 S.Ct. 1126, 1137, 188 L.Ed.2d 25 (2014) ; Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
C. Consent
¶ 20 In determining whether consent was given, we employ a two-step process.
*157 First, we examine whether relevant words, gestures or conduct supports a finding of consent. State v. Artic, 2010 WI 83, ¶ 30, 327 Wis. 2d 392, 786 N.W.2d 430. Second, we examine whether the consent was voluntarily given. Id.
1. Implied Consent
¶ 21 As we have explained, consent to search need not be given verbally. State v. Phillips, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998) (citing United States v. Griffin, 530 F.2d 739, 741 (7th Cir. 1976) ; United States v. Donlon, 909 F.2d 650, 652 (1st Cir. 1990)invalidated on other grounds by United States v. Omar, 104 F.3d 519 (1st Cir. 1997) ). Consent given through conduct "provides a sufficient basis on which to find that the defendant consented to the search." Phillips, 218 Wis. 2d at 197, 577 N.W.2d 794 (concluding that defendant's affirmative assistance in the search of his bedroom demonstrated his consent to the search). "Through conduct, an individual may impliedly consent to be searched." Brar, 376 Wis. 2d 685, ¶ 17, 898 N.W.2d 499.
¶ 22 In addition, the United States Supreme Court has recently explained that consent also may be shown by the context in which consent arises. Birchfield, 136 S.Ct. at 2185. In Birchfield, the Court said that "[i]t is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context." Id. (internal citations omitted). The Court's connection between context and consent was made in the course of Birchfield 's review of searches incident to arrest for OWI in states that have implied-consent laws. Birchfield cited two cases that demonstrated constitutionally sufficient consent because of the context in which consent was lawfully implied: Florida v. Jardines, 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) and Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).
¶ 23 In Jardines, the Court, through Justice Scalia, recognized the sanctity of the home and that at the "very core" of the Fourth Amendment "stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion,' " and that this right extended to the curtilage of the home, including the home's front porch. Jardines, 569 U.S. at 6-7, 133 S.Ct. 1409 (quoting Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ).
¶ 24 However, the Supreme Court also said that the sanctity of the curtilage of one's home is not absolute and certain permissions to enter may be implied. Jardines, 569 U.S. at 8, 133 S.Ct. 1409. In Jardines, the Court recognized that by putting a knocker on his door, the homeowner had given implicit consent for visitors to approach and said that the implicit granting of such permission "does not require fine-grained legal knowledge." Id. Rather, law enforcement could approach a homeowner's front door "precisely because that is 'no more than any private citizen might do.' " Id. (quoting Kentucky v. King, 563 U.S. 452, 469, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ). The Court recognized that a homeowner who places a knocker on his front door impliedly invites visitors to approach and enter upon the home's curtilage. Jardines, 569 U.S. at 8, 133 S.Ct. 1409. Stated otherwise, in the context established by the homeowner, consent to enter the curtilage and approach the front door was given.
¶ 25 The other decision referenced in Birchfield, Marshall v. Barlow's, Inc., noted that while generally the Fourth Amendment prohibits searches without a warrant, certain businesses and industries are subject *158 to exception. Marshall, 436 U.S. at 313, 98 S.Ct. 1816. Indeed, "pervasively regulated business[es]" and " 'closely regulated' industries 'long subject to close supervision and inspection,' " are subject to warrant exceptions for certain searches. Id. (quoting Colonnade Catering Corp. v. United States, 397 U.S. 72, 73-75, 77, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (wherein the Court held that the statutory right to enter and inspect a facility authorized to serve liquor required no warrant for the search) ).
¶ 26 The Fourth Amendment exception upheld in Colonnade was grounded in "unique circumstances" in that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy, could exist for a proprietor over the stock of such an enterprise." Marshall, 436 U.S. at 313, 98 S.Ct. 1816 (internal citation omitted). Referring to the liquor and firearms industries, the Court said that "when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation." Id. According to the Court, businesses in these industries are part of "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." Id. By choosing to participate in certain businesses, the Court concluded that those persons had "accept[ed] the burdens as well as the benefits of their trade," in a manner different from other businesses and thus "in effect consents to the restrictions placed upon him." Id. Once again, it was the context in which such businesses are operated that evidenced voluntary consent to be subjected to significant governmental regulation. Stated otherwise, the context in which one operates a business involved in alcohol or firearms had a well-known history of significant governmental regulation such that an owner of such a business would have no reasonable expectation of privacy from governmental oversight of his business. Id.
¶ 27 Birchfield 's discussion of the relationship between context and consent instructs that context is part of the totality of circumstances that courts should review when consent to search is at issue. In regard to the context of highway regulation, we note that the statutes at issue here are the legislature's attempt to stop the injuries and deaths drunken drivers inflict year after year on others who use Wisconsin highways.[7] That drunken driving has resulted in and necessarily increased state regulation of the privilege of driving on public roadways is well known. Therefore, the context of well-publicized regulations forms part of the totality of circumstances we examine to determine whether a driver who has been arrested for OWI consented to be searched.
¶ 28 Some of the regulations to which drivers consent have never been challenged. For example, they agree to drive on the right side of the road, Wis. Stat. § 346.05 ; to yield the right-of-way to emergency vehicles, Wis. Stat. § 346.19 ; to comply with posted speed limits, Wis. Stat. § 346.57(4) ; and not to drive with a prohibited blood alcohol concentration, Wis. Stat. § 346.63(1)(b). While these regulations do not have implications for constitutional rights, drivers do not sign a form acknowledging these obligations each time they get into their vehicle; yet, they are held accountable and required to abide by each *159 of them because they chose to drive a vehicle upon public highways.
¶ 29 Just as Wisconsin drivers consent to the above-listed obligations by their conduct of driving on Wisconsin's roads, in the context of significant, well-publicized laws designed to curb drunken driving, they also consent to an evidentiary drawing of blood upon a showing of probable cause to believe that they operated vehicles while intoxicated.[8] This qualified consent to search is required in order to exercise the privilege of driving in Wisconsin.[9] As Birchfield explained, implied consent laws condition "the privilege of driving on state roads and [ ] the privilege would be rescinded if a suspected drunk driver refused to honor that condition." Birchfield, 136 S.Ct. at 2169. Consent is complete at the moment the driver begins to operate a vehicle upon Wisconsin roadways if the driver evidences probable cause to believe that he or she is operating a vehicle while intoxicated. Wis. Stat. §§ 343.305(2) & (3)(a).[10]
¶ 30 As acknowledged by the United States Supreme Court, driving on state highways is a privilege; it is not a right. Id. In Wisconsin, it is a statutory privilege that comes with statutory obligations when that privilege is exercised. Steeno v. State, 85 Wis. 2d 663, 671, 271 N.W.2d 396 (1978) ("The granting of an automobile license to operate a motor vehicle is a privilege and not an inherent right.").
¶ 31 The United States Supreme Court recognized that implied consent laws are the context in which constitutionally sufficient consent for chemical testing may be given when it opined, "our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.... [N]othing we say here should be read to cast doubt on them." Birchfield, 136 S.Ct. at 2185.
¶ 32 Birchfield also established a "categorical" rule that a breath test does not implicate "significant privacy concerns," and therefore, a warrant is not *160 needed to administer a breath test. Birchfield, 136 S.Ct. at 2176-84. This is an interesting conclusion because of the Court's previous statements that there are no bright-line rules for determining when a warrant is not required. See Missouri v. McNeely, 569 U.S. 141, 158, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). It is also interesting because a driver's bodily alcohol concentration can be determined from evidentiary breath tests as well as from blood tests.
¶ 33 Birchfield went on to explain, "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." Birchfield, 136 S.Ct. at 2185 (emphasis added). The limit on the consequences of the decision to drive while intoxicated was the imposition of criminal penalties for refusing to permit a blood draw. Id.
¶ 34 Criminal penalties for withdrawing consent to a blood draw were beyond the scope of implied-consent laws because there was an insufficient nexus between the consequence of criminal penalties and choosing to drive on the highways in those states that imposed criminal penalties for withdrawing consent to provide a blood sample for testing. Id. at 2186. In Wisconsin, the consequences of refusing to permit a blood draw are civil and evidentiary, not criminal. Wis. Stat. § 343.305(4).
¶ 35 Relevant to assessing future challenges to refusal to submit to a blood draw, the Supreme Court adopted the following standard: motorists are "deemed to have consented to only those conditions that are 'reasonable' in that they have a 'nexus' to the privilege of driving and entail penalties that are proportional to severity of the violation." Id. When applying that standard, the Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense [for refusing to submit]." Id. However, imposing "civil penalties and evidentiary consequences" on motorists who refuse to submit to a blood draw are permissible because civil penalties, such as license revocation, have a nexus to driving. Id. at 2185 (citing McNeely, 569 U.S. at 160-61, 133 S.Ct. 1552 ).
¶ 36 Wisconsin imposes no criminal penalties for withdrawing consent previously given. The only criminal consequence imposed for drunken driving in Wisconsin arises from repeated OWI and PAC convictions and from convictions for causing injury or death by intoxicated use of a vehicle. See generally Wis. Stat. § 346.65. Criminal penalties do not arise from withdrawing consent to blood draws. Wis. Stat. § 343.305(4). All penalties for refusal are administrative and evidentiary. For example, a refusal that leads to a first OWI conviction subjects a defendant to a license suspension and a forfeiture but no jail time. Wis. Stat. §§ 343.305(4) & 346.65(1)(a).
¶ 37 Accordingly, we confirm that because it is constitutionally permissible to impose civil penalties as a consequence for refusing to submit to a blood draw, as Wis. Stat. § 343.305(4) provides, Wisconsin's implied-consent statutes, §§ 343.305(2) & (3)(a), describe a context consistent with Birchfield where constitutionally sufficient consent to search arises through conduct. Birchfield, 136 S.Ct. at 2185. Stated otherwise, it is not statutes that grant consent to search, but rather, consent is granted by the driver's exercising the privilege of driving on Wisconsin highways when he or she has imbibed sufficient alcohol or drugs to become intoxicated. Furthermore, if the *161 consent that arises when a driver's conduct falls within §§ 343.305(2) & (3)(a) were not constitutionally sufficient consent for a blood draw, there would be no reason to provide a statutory opportunity to withdraw consent under § 343.305(4).
¶ 38 Furthermore, we presume that drivers know the laws applicable to the roadways on which they drive. State v. Weber, 2016 WI 96, ¶ 78, 372 Wis. 2d 202, 887 N.W.2d 554 (Kelly, J., concurring). Likewise, we also recognize, as has the United States Supreme Court, that in a state with civil penalties for refusal to submit to a blood draw, "a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test." South Dakota v. Neville, 459 U.S. 553, 560 n.10, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).
¶ 39 In Neville, the Supreme Court examined whether Neville's refusal to submit to a blood-alcohol test could be used as evidence of guilt for drunken driving at his trial. The circuit court of South Dakota had suppressed Neville's refusal to submit to a blood-alcohol test based on the circuit court's conclusion that evidence of refusal violated Neville's federal constitutional rights. Id. at 556, 103 S.Ct. 916. The Supreme Court reversed the suppression because Neville's "right to refuse the blood-alcohol test [ ] is simply a matter of grace bestowed by the South Dakota legislature," not a constitutional right. Id. at 565, 103 S.Ct. 916. As the Court further explained, because a driver had no constitutional right to refuse a blood-draw when there was probable cause to arrest for OWI, the driver's refusal could be used against him at trial as evidence of guilt. Id.; see also Howes, 373 Wis. 2d 468, ¶ 62, 893 N.W.2d 812 (Gableman, J., concurring) ("[A] driver has no statutory or constitutional right to refuse [blood alcohol testing] without consequences.").[11]
¶ 40 Of course, consent voluntarily-given before a blood draw may be withdrawn with or without a statutory reminder. United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005). However, when consent is withdrawn, civil consequences may follow because the opportunity to withdraw voluntarily given consent is not of constitutional significance. Neville, 459 U.S. at 565, 103 S.Ct. 916 ; Wis. Stat. § 343.305(4).
¶ 41 The legitimacy of implied-consent laws has been supported repeatedly by the United States Supreme Court. In McNeely, the Court stated that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." McNeely, 569 U.S. at 160, 133 S.Ct. 1552 (quoting Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) ). The Court further recognized that "drunk driving continues to exact a terrible toll on our society," and that "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." McNeely, 569 U.S. at 160-61, 133 S.Ct. 1552.
*162 ¶ 42 Other states are in accord with our conclusion that drivers give constitutionally sufficient consent through driving on state highways and drinking to a point evidencing probable cause of intoxication. For example, the Supreme Court of Colorado held that warrants need not be obtained for unconscious drivers as the result of their previously-given consent under Colorado's "Expressed Consent Statute." People v. Hyde, 393 P.3d 962 (Colo. 2017). The Colorado court recognized that "Hyde's statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement." Id., ¶ 3. Similarly, the Supreme Court of Kentucky has said that drivers "consent[ ] to testing by operating a vehicle in Kentucky." Helton v. Commonwealth, 299 S.W.3d 555, 559 (Ky. 2009).
¶ 43 As judicial opinions of other states, as well as the United States Supreme Court's prior statements show, "[i]mplied consent is not a second-tier form of consent." Brar, 376 Wis. 2d 685, ¶ 23, 898 N.W.2d 499. Rather, when a driver chooses to operate a vehicle upon Wisconsin's roads, he or she does so charged with knowing the laws of this state. See Byrne v. State, 12 Wis. 577 (*519), 580 (*521) (1860).
¶ 44 Those laws include Wis. Stat. §§ 343.305(2) & (3)(a) that function together. Section 343.305(2) provides that anyone who "drives or operates a motor vehicle upon the public highways of this state ... is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of [alcohol or other prohibited substances], when requested to do so by a law enforcement officer." Section 343.305(3)(a) applies when a driver is arrested based on probable cause to believe that he or she is intoxicated, wherein a driver's conduct completes his or her obligation to give samples of breath, blood or urine.
¶ 45 In the case before us, Mitchell chose to avail himself of the privilege of driving upon Wisconsin's roads. Because he did so while intoxicated, by his conduct he consented to the effect of laws that are relevant to exercising that privilege. He did not need to read them off one-by-one, and then sign a piece of paper acknowledging his consent to be subject to those rules and penalties for failing to follow them. By driving in Wisconsin, Mitchell consented to have samples of his breath, blood or urine taken upon the request of a law enforcement officer who had probable cause to believe he was intoxicated, unless he withdrew such consent. Wis. Stat. §§ 343.305(2) and (3)(a).
2. Voluntary Consent
¶ 46 A determination that consent has been given is not the end of our inquiry, we also must determine whether the consent was given "freely and voluntarily." Artic, 327 Wis. 2d 392, ¶ 32, 786 N.W.2d 430. "However, the State need not demonstrate that consent was given knowingly or intelligently." Brar, 376 Wis. 2d 685, ¶ 26, 898 N.W.2d 499 (citing Schneckloth, 412 U.S. at 241, 93 S.Ct. 2041 ("Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.")). The concept of " 'voluntariness' reflects an accommodation of complex, somewhat conflicting values." Artic, 327 Wis. 2d 392, ¶ 32, 786 N.W.2d 430 (citing Schneckloth, 412 U.S. at 224-25, 93 S.Ct. 2041 ).
¶ 47 "The test for voluntariness is whether consent to search was given in the absence of duress or coercion, either express or implied."
*163 Phillips, 218 Wis. 2d at 197, 577 N.W.2d 794. In evaluating the voluntariness of consent, we evaluate "the totality of all the surrounding circumstances." Artic, 327 Wis. 2d 392, ¶ 32, 786 N.W.2d 430 (quoting Schneckloth, 412 U.S. at 226, 93 S.Ct. 2041 ). No single criterion controls voluntariness. Phillips, 218 Wis. 2d at 197, 577 N.W.2d 794.
¶ 48 In making a determination of voluntariness, the State bears the burden to prove by clear and convincing evidence that consent was given voluntarily. Id. Our determination of the voluntariness of consent is a mixed question of fact and law. Id. In addition, voluntariness is a determination that we consider relative to Wis. Stat. §§ 343.305(2) & (3)(a) when a driver commences operation of his or her vehicle on Wisconsin roadways and under § 343.305(3)(b) when an unconscious driver has not availed himself of an opportunity to withdraw consent previously given.
¶ 49 Consent to search that arises in the context of Wisconsin's implied-consent laws is voluntary in one respect that is similar to the voluntariness of consent in Colonnade because Wisconsin has a long history of close governmental regulation of its highways in regard to drunken drivers. Stated otherwise, the privilege of driving on Wisconsin highways comes within the context of well-publicized requirements to provide samples of breath, blood or urine to law enforcement who have probable cause to believe that the driver is intoxicated.
¶ 50 We now further consider voluntary consent under four subsections of Wisconsin's implied-consent law at issue in the case before us: Wis. Stat. §§ 343.305(2), 343.305(3)(a), 343.305(4) and 343.305(3)(b).[12]
a. Wisconsin Stat. §§ 343.305(2) & (3)(a)
¶ 51 The voluntariness of consent by conduct that occurs when a driver commences operation of his vehicle on Wisconsin roadways is unequivocal and constitutionally sufficient when he or she evidences the indicia of intoxication such that there is probable cause to believe he or she is driving under the influence. Stated otherwise, voluntary consent arises through the effect of a driver's conduct in the context of Wisconsin law, Wis. Stat. §§ 343.305(2) and 343.305(3)(a).
¶ 52 Wisconsin Stat. § 343.305(2) clearly provides, "[a]ny person who ... drives or operates a motor vehicle upon the public highways of this state ... is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances...." A driver's consent is conditioned on probable cause to believe he or she is intoxicated or has caused serious injury or death. As Wis. Stat. § 343.305(3)(a) provides, "Upon arrest of a person for violation of s. 346.63(1) [driving while intoxicated], (2m) [underage drinking], or (5) [commercial driver] or ... (2) [causing injury] ... a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine." Therefore, as an initial matter, one consents to search by driving on Wisconsin roadways when one has imbibed sufficient alcohol to support probable cause to arrest. The choice to drive on Wisconsin roadways and the choice to *164 drink or ingest drugs to the point of probable cause to arrest for OWI are voluntary choices.
b. Wisconsin Stat. § 343.305(4)
¶ 53 Wisconsin Stat. § 343.305(4) provides a statutory opportunity to withdraw consent given under §§ 343.305(2) and (3)(a), when an officer has probable cause to arrest the driver. However, civil penalties may follow when consent is withdrawn. Section 343.305(4) provides in relevant part:
You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs ... or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person....
This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system.... If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.[13]
It is helpful to keep subsection (4) in mind when discussing Wis. Stat. § 343.305(3)(b), which is central to this appeal.
¶ 54 Wisconsin Stat. § 343.305(4) provides a statutory opportunity to withdraw consent, even though a driver has operated a vehicle on Wisconsin roads and has imbibed sufficient alcohol to be arrested for OWI. Of course, one may withdraw consent previously given with or without a statutory reminder. See Sanders, 424 F.3d at 774. Nevertheless, a driver may forfeit the driver's opportunity to withdraw consent by failing to timely engage it. State v. Ndina, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612. Furthermore, a defendant may forfeit an opportunity he or she otherwise would have by his or her conduct. State v. Anthony, 2015 WI 20, ¶ 59, 361 Wis. 2d 116, 860 N.W.2d 10.
¶ 55 Here, Mitchell drank sufficient alcohol to render himself unconscious. He had a BAC of 0.222. It is no wonder that he passed out.[14] Through this conduct, he forfeited all opportunity to withdraw the consent to search that he had given.
c. Wisconsin Stat. § 343.305(3)(b)
¶ 56 Mitchell was unconscious when his blood was drawn. Wisconsin Stat. § 343.305(3)(b) addresses blood draws from unconscious persons who have not availed themselves of the statutory opportunity that is provided by § 343.305(4) or otherwise taken steps to withdraw consent. Some who are unconscious have imbibed sufficient alcohol or drugs to render themselves *165 unconscious; others may be unconscious due to an injury sustained in an accident. Section 343.305(3)(b) provides in relevant part:
A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated s. 346.63(1) [driving while intoxicated], (2m) [underage drinking] or (5) [commercial driver] ... [or caused injury] one or more samples specified in par. (a) or (am) may be administered to the person.
¶ 57 The Fourth Amendment question is whether drawing Mitchell's blood while he was unconscious was unreasonable and therefore in violation of Fourth Amendment's prohibitions against unreasonable searches. Mitchell claims the blood draw was unreasonable because he was unconscious when the Informing the Accused form was read to him. The State claims that the blood draw was reasonable because Jaeger had arrested Mitchell for driving while intoxicated.[15]
¶ 58 Mitchell's self-induced physical condition does not render Wis. Stat. § 343.305(3)(b)'s presumption unreasonable under the totality of circumstances applicable to our Fourth Amendment discussion. First, by exercising the privilege of driving on Wisconsin highways, Mitchell's conduct demonstrated consent to provide breath, blood or urine samples to be tested in accord with §§ 343.305(2) & (3)(a) if law enforcement had probable cause to believe that he had operated his vehicle while intoxicated. Second, Jaeger had probable cause to arrest Mitchell for driving while intoxicated. His speech was slurred; he smelled of alcohol; he had difficulty maintaining his balance; his preliminary breath test showed a BAC of 0.24, which indicates significant intoxication. Third, Mitchell chose to drink sufficient alcohol to produce unconsciousness. Fourth, by his conduct, Mitchell forfeited the statutory opportunity to assert that he had "withdrawn consent" he previously gave. Ndina, 315 Wis. 2d 653, ¶ 29, 761 N.W.2d 612 ; Anthony, 361 Wis. 2d 116, ¶ 59, 860 N.W.2d 10.
¶ 59 Therefore, under the totality of circumstances as applied to Mitchell, Wis. Stat. § 343.305(3)(b)'s presumption is reasonable. Accordingly, drawing Mitchell's blood was reasonable, and no Fourth Amendment violation occurred.
¶ 60 Because we conclude that consent given by drivers whose conduct falls within the parameters of Wis. Stat. § 343.305 is constitutionally sufficient consent to withstand Fourth Amendment scrutiny, and although consent must be voluntary, it need not be knowing, we overrule State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867. We do so for two reasons. First, we clarify that Padley has no precedential *166 effect because its holding is in direct conflict with an earlier, published court of appeals decision, State v. Wintlend, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745. Cook v. Cook, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (concluding that the court of appeals cannot overrule or modify one of its published opinions). Second, Padley is simply wrong as a matter of law. There, the court of appeals said that "implied consent" is different than "actual consent," and that actual consent is given only when a driver affirms his or her previously-given implied consent after being read the Informing the Accused form. See Padley, 354 Wis. 2d 545, ¶ 38, 849 N.W.2d 867. The court also incorporated the concept of "knowingly" into consent law. Id., ¶ 62. Under the reasoning in Padley, driving on Wisconsin highways and drinking, using drugs or being involved in an accident causing death or serious bodily injury while violating a state or local traffic law does not provide constitutionally sufficient consent through conduct. We conclude otherwise.
¶ 61 The question that remains in regard to Mitchell is whether Wis. Stat. § 343.304(3)(b)'s presumption that consent has not been withdrawn is reasonable for a driver who has suffered an injury rendering him or her unconscious, but for whom there is probable cause to believe that he or she operated a vehicle in violation of laws regulating the use of intoxicants.
¶ 62 We begin by noting that all drivers, by their conduct, consent to provide samples of their breath, blood or urine when requested by law enforcement personnel who have probable cause to arrest for driving while intoxicated. Wis. Stat. §§ 343.305(2) & (3)(a). We also recognize that consent to search once given may be withdrawn. See Sanders, 424 F.3d at 774. Although no magic words are required to withdraw consent, the intent to withdraw must be unequivocal. Id. Withdrawal of consent given under implied-consent laws also may be withdrawn. Wisconsin Stat. § 343.305(4) reminds drivers of the opportunity to "withdraw" consent previously given. See also State v. Arrotta, 157 Idaho 773, 339 P.3d 1177, 1178 (Idaho 2014) (concluding that under Idaho implied-consent laws, a suspected drunken driver can withdraw his or her consent to test for the presence of alcohol). However, for many unconscious drivers, it may be that they have taken no steps to demonstrate unequivocal intent to withdraw consent previously given.
¶ 63 Furthermore, the opportunity to refuse a blood test when there is probable cause to believe the driver is intoxicated is not of constitutional significance, as is shown by Supreme Court jurisprudence concluding that withdrawal of consent may be used as evidence of guilt at trial. State v. Crandall, 133 Wis. 2d 251, 255, 394 N.W.2d 905 (1986) (citing Neville, 459 U.S. at 565, 103 S.Ct. 916 (concluding that it is not "fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial")).
¶ 64 In addition, Wis. Stat. § 343.305(3)(b)'s presumption affects only unconscious drivers for whom law enforcement has probable cause to believe that the driver has violated statutory proscriptions on use of intoxicants. Therefore, those drivers who are unconscious but for whom law enforcement does not have probable cause to believe they drove while intoxicated will not be subject to the presumption of § 343.305(3)(b).
¶ 65 For drivers for whom the presumption applies, Wis. Stat. § 343.305(3)(b) is consistent with United States Supreme Court precedent that a warrantless search at arrest does not violate the Fourth *167 Amendment when there is consent given prior to the search. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ; Schneckloth, 412 U.S. at 222, 93 S.Ct. 2041. Therefore, we conclude that under the totality of circumstances the presumption of § 343.305(3)(b) is reasonable. Accordingly, it does not violate Fourth Amendment rights of one for whom law enforcement has probable cause to believe he or she operated a vehicle after consuming alcohol or drugs to the point of intoxication.
III. CONCLUSION
¶ 66 We conclude that Mitchell voluntarily consented to a blood draw by his conduct of driving on Wisconsin's roads and drinking to a point evidencing probable cause of intoxication. Further, through drinking to the point of unconsciousness, Mitchell forfeited all opportunity, including the statutory opportunity under Wis. Stat. § 343.305(4), to withdraw his consent previously given; and therefore, § 343.305(3)(b) applied, which under the totality of circumstances reasonably permitted drawing Mitchell's blood. Accordingly, we affirm Mitchell's convictions.
By the Court. -The judgment of the circuit court is affirmed.

All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

Preliminary breath tests are not sufficient evidence to prove prohibited alcohol concentrations at trial. Wis. Stat. § 343.303.

There was no warrant sought prior to drawing Mitchell's blood.

The Honorable Terence T. Bourke of Sheboygan County presided.

The court of appeals, noting that two of its prior cases had reached opposite conclusions, asked us to clarify whether implied consent is equivalent to constitutionally sufficient consent. Compare State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867 (holding that implied consent is not constitutionally sufficient consent), with State v. Wintlend, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745 (holding that implied consent is constitutionally sufficient). See also Cook v. Cook, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (concluding that the court of appeals does not have the power to overrule or modify one of its published opinions).

"Historically, we have interpreted Article I, Section 11 of the Wisconsin Constitution in accord with the Supreme Court's interpretation of the Fourth Amendment." State v. Arias, 2008 WI 84, ¶ 20, 311 Wis. 2d 358, 752 N.W.2d 748.

The same is true across the nation. For example, it has been reported that in 2016 drunken driving took one life every 50 minutes in the United States. See National Highway Traffic Safety Administration, Drunk Driving, https://www.nhtsa.gov/risky-driving/drunk-driving (last visited June 25, 2018).

Of course, probable cause to believe that a driver is operating while intoxicated is sufficient to arrest the driver.

Probable cause to believe that a driver operated a vehicle while intoxicated is required before the driver must provide samples of breath, blood or urine. Wis. Stat. §§ 343.305(2) & (3)(a).

The point in time when a driver consents has been described in various ways based on the facts of the case and the arguments of counsel. For example, in Wintlend, 258 Wis. 2d 875, 655 N.W.2d 745, the court of appeals addressed Wintlend's argument that the officer's reading the Informing the Accused form to him coerced consent. Id., ¶ 8. The court rejected his argument and concluded that the statutory terms chosen by the legislature demonstrated that consent had been given before Wintlend was read the Informing the Accused form. Id., ¶ 16.
In State v. Neitzel, 95 Wis. 2d 191, 289 N.W.2d 828 (1980), Neitzel's license was suspended for 60 days for his unreasonable refusal to permit chemical testing. Id. at 192, 289 N.W.2d 828. Neitzel argued that the refusal was not unreasonable because he had asked to consult his attorney before deciding and his request was denied. Id. at 193, 289 N.W.2d 828. In dismissing Neitzel's argument, we said that under the circumstances no right to counsel was provided. Id. We also explained that a driver must be arrested before he or she could be asked to submit to chemical testing, but custody at that point did not implicate a right to counsel. Id. at 200, 289 N.W.2d 828. Because the focus in Neitzel was on an alleged right to counsel, our discussion addressed that concern. However, our discussion herein explains why constitutionally sufficient consent occurs when a driver operates a vehicle on Wisconsin's highways and drinks or uses drugs to a point where the driver exhibits probable cause that he or she is intoxicated.

Justices Shirley Abrahamson, Ann Walsh Bradley, Rebecca Grassl Bradley and Daniel Kelly manufacture a constitutional right to refuse blood-draws to test for blood-alcohol content of drivers who operate vehicles while intoxicated, notwithstanding the United States Supreme Court's clearly stated explanation in South Dakota v. Neville, 459 U.S. 553, 560 n.10, 565, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), that drunken drivers have no constitutional right to refuse blood-alcohol testing. State v. Dalton, 2018 WI 85, ¶ 61, 383 Wis. 2d 147, 914 N.W.2d 120 (manufacturing a constitutional right for drunken drivers to refuse blood-alcohol testing).

We note that other circumstances are impacted by Wisconsin implied consent law that we do not discuss here. See Wis. Stat. § 343.305(3)(ar)2., causing death or great bodily harm when there is reason to believe the driver violated state or local traffic law. Here, we limit our discussion to those circumstances where there are no facts in addition to probable cause to believe the driver was intoxicated.

Justices Shirley Abrahamson, Ann Walsh Bradley, Rebecca Grassl Bradley and Daniel Kelly strike down, sub silentio, Wis. Stat. § 343.305(4)'s provision that the fact of refusal can be used against a drunken driver in court because they label refusal of chemical testing a constitutional right. Dalton, 383 Wis. 2d 147, ¶ 61. However, the United States Supreme Court has concluded that refusing to take a blood test is not of constitutional significance and can be used against the defendant at trial. Neville, 459 U.S. at 565, 103 S.Ct. 916. The majority opinion in Dalton and the separate writings in this case will create confusion in Wisconsin courts on the admissibility of refusal evidence because Neville has not been overruled and remains authoritative on whether refusal is or is not a constitutional right.

See National Institute on Alcohol Abuse and Alcoholism, Alcohol Overdose: The Dangers of Drinking Too Much, https://pubs.niaaa.nih.gov/publications/AlcoholOverdoseFactsheet/Overdosefact.htm (Oct. 2015).

The State's contention could be read to assert that the blood draw was a search incident to arrest within the traditional exception to the Fourth Amendment's warrant requirement.
Mitchell's blood draw parallels the search incident to arrest doctrine, as probable cause to arrest Mitchell for driving while intoxicated is fully supported by the record. That a search incident to arrest is an exception to the warrant requirement is an important principle to keep in mind. This is so because all unconscious drivers are not subjected to a blood draw under Wisconsin implied consent laws. Only those drivers for whom "a law enforcement officer has probable cause to believe that the person has violated [laws regulating use of intoxicants]" can be searched. Wis. Stat. § 343.305(3)(b). This limitation also is consistent with the reasonableness requirement of the Fourth Amendment. For an unconscious driver, a blood draw is the only means by which to obtain evidence of the crime for which he or she has been charged.